Good morning, Your Honor. May it please the Court, Guy Grande on behalf of Petitioner Luis Gomez-Granillo. The Court requested that the parties submit a supplemental briefing on the issue of whether or not, in the absence of an adverse credibility finding by either the immigration judge or the Board of Immigration Appeals, should the Court find true all petitioner's testimony at hearing. And our position is yes, and that this is a standard that has been long held by this Court as well as other circuits and the Board of Immigration Appeals. The government would argue that the issue of an adverse credibility finding should, in a way, be broken up from eligibility phase and relief phase. Our position is that there should be no difference, and that the Court's decisions that we cited in our briefs suggest that an adverse credibility finding or a lack thereof applies to all sorts of issues within immigration court regarding the charge of inadmissibility and the relief. Is there a case where that principle has been applied in a removal, or I think you're calling it a relief proceeding, rather than in an eligibility proceeding? Where the lack of an adverse credibility finding in a relief phase is standard operating procedure, for lack of a better term, in asylum cases, Your Honor. That's an asylum case. Yes. But that's not a removal proceeding, which I had understood was the term, although I'm not experienced in these immigration matters. This is a removal proceeding. As far as I could tell, there wasn't a case that relied on this principle in a removal proceeding. The McDonald case had a footnote on it, but it essentially was dicta because the Court found no violation. The person at issue had knowingly voted improperly in Hawaii. So is there any case, would this be the first case that imported this principle to a removal proceeding? Actually, no, Your Honor. With all due respect, the cases that are cited in our supplemental brief are all, quote-unquote, removal cases. Your Honor mentions McDonald v. Gonzales. That was a case, as Your Honor mentioned, where the bona fides of a marriage were discussed and decided because respondent in that case, or the alien in that case, faced removal back to the Philippines. In Lopez Alvarado v. Ashcroft, that was also a removal case that regarded an issue in cancellation of removal. That was a case in which there was no evidence of corroborative documentary evidence determining whether or not the tenure's physical presence could be established by testimony. And again, the United Circuit in that case ruled that with absent and adverse credibility finding, the testimony in light of the fact that there were no corroborative documentary evidence was sufficient and substantial to establish that there was no corroborative evidence.  And we were not given that prong of eligibility in that removal case. Which case was that? That was Lopez Alvarado v. Ashcroft, Your Honor. And the fact that the defendant is the main tenant in immigration law and removal proceedings, and the fact that respondent in this case, well, and we don't believe that there makes a difference between an adverse credibility finding in deciding in the inadmissibility phase or in the relief phase has any bearing. Well, I guess I'm just assuming you're correct, that we agree with your position. Does that, you think that forecloses a finding or that there's no then, there's no substantial evidence to support the IJ's finding? That there's reasonable, whatever it is, reason to believe, whatever the language is? There is a lot of circumstantial evidence, right? There is a lot of circumstantial evidence, Your Honor. In this case, we would not say that it forecloses the issue and resolves it in favor of the respondent. But I think that it is, it only bolsters respondent's position, that the government did not establish via substantial evidence that the You're saying it bolstered because the IJ didn't make an adverse credibility finding? That's correct, Your Honor. Presumably, there's an implied, you rejected your client's position, right? Let me back up. If respondent's testimony is to be taken as the truth, then That's a big difference. In other words, that's what I'm asking. I think that's what Judge Tashima was driving at. Where an adverse credibility finding is required, the absence is that there's a collateral effect of, it is presumed to be true then. Yes. But if we don't require that here, then it's just that we defer to the judgment of the trier of fact and the observer of witnesses. That's the normal concept. So what are you arguing? Are you saying, okay, assume we accept your position and he is presumed to be true, then you prevail? Or that there would still be a basis for finding that there was substantial evidence despite his true testimony? Our position is that if respondent's testimony is true, then he prevails. Okay. So then my question is, I'm not sure how it plays into this case, but the standard of reason to believe, at least according to the BIA's decision in the matter of Casillas-Topepe, as I understand it, that they have adopted last year the notion that essentially it's a collective knowledge doctrine. It's not just what is known to the actual inspecting agent, but what is known at that time from that agent all the way up to the Secretary of Homeland Security and all of that. So is that your understanding as well? That is my understanding as well, Your Honor. Okay. And so your argument is that what is the information that was known to the government at the time it made the determination as of admission that they had reason to believe? My understanding of the information that the government had was that there was substantial amount of concealed marijuana in the truck that was being used and that the respondent was driving across the border. Period. Period. Would that include their general knowledge that we see in a lot of these smuggling cases that people who are... In fact, that's what the second agent testified to, I think, was that in their experience, somebody that that much would not likely be ignorant of the fact that he's part of a trafficking operation. Right. And that's true. Cut off the response. Well, that's not all the information that the immigration judge or the BIA had. Didn't the decisions reflect that your client, when told not to make use of marijuana, didn't make any phone calls at the border, nevertheless persisted in making phone calls? Reportedly, he was nervous. He had a history of currency transactions, and the log wasn't accurate with regard to where he had stopped the day before in the United States. So wouldn't that be sufficient... Why wouldn't that be sufficient to establish reason to believe unless the absence of an express credibility determination won the case for you? Well, those findings by those officers at that moment, based on their experience... But those were findings by... Some of that came... Okay, go ahead. Well, the testimony of those officers... Let me put it that way. The testimony of those officers regarding their experience and what they discovered, our view is that that goes to whether or not they are going to charge the respondent with the charge, whether or not they are going to lodge the charge against the respondent. So it's more of a probable cause determination, and the courts have mentioned that. I mean, that's the basis for filing the charge. The government still has to establish with substantial evidence, by substantial evidence, that that charge is sustained, and we don't feel that that happened in this case, Your Honor. Okay, you're over time. I'll give you a minute on rebuttal. Thank you. May it please the Court, my name is Jennifer Lightbody, and I represent the respondent. I think it's critical to understand initially that Petitioner was standing at the border, asking to enter the United States, and the first thing that the officers discover is that he has four tons of marijuana in his truck. And the officer then has to determine whether this Petitioner is admissible or not. And it is the Petitioner's burden to show that he is admissible. This isn't a removal proceeding, this is an inadmissibility proceeding. And so it's his burden to show clearly and beyond doubt that he is admissible. And here there is an agent who sees four tons of marijuana, then they begin to question the Petitioner after they discover this four tons of marijuana. And the question is, was there reason for that officer to believe that he was engaged in illicit drug trafficking? And so the government doesn't have the burden here to prove that he engaged in illicit trafficking. It's whether there was substantial evidence to support the position that there was a reason to believe. Okay. I take your point, but let's just play this out. Judge Wolf correctly cited other circumstances. Gomez Granillo's explanation to the I.J. was, well, he had explanations for every one of those activities. The phone calls, why he was making the phone calls, why the log didn't reflect his stopover, and so on. Now, if the I.J., in hearing that testimony, believed those explanations, would that affect the determination of reason to believe? Or are you content to say that even given these other suspicious circumstances, what the officers thought might be evidence of his knowing complicity, that they were innocent explanations which the I.J., hearing the explanation as a live witness, with an opportunity to let him explain himself, so that all that we would be looking at would be the fact of the four tons of marijuana? Are you saying that would be enough to sustain the determination? I think it's enough to, yes, I do. I think it's enough to show that they can infer knowledge. That that gives the officer problem. Even if they're wrong. I'm sorry? Even if it turns out he's nothing but an unknowing mule. As is said, he wasn't around when they loaded the truck. He didn't know anything about it. And the I.J. believes that story at the time of the hearing. You're saying they're entitled to make a mistake. They had reason to believe. Is it a probable cause standard or reasonable suspicion standard? It's a probable cause standard. And I think the court's case law in the context of criminal cases says, when you have a substantial amount of marijuana, and here we have four tons, that you can infer knowledge.  And so that would be sufficient to give them that probable cause. And I would note that there was also a judicial finding by a magistrate judge in this case, even though the agency didn't rely on it. I think it further illustrates that there was probable cause to believe that he was intentionally importing a controlled substance. So we have a separate judicial finding that I think illustrates that there was probable cause. You're focusing on whether the agents at the border had reason to believe. As I read Lopez Molina, I thought the Ninth Circuit was focusing on whether the immigration judge had reason to believe, and that's why you could take into account, for example, the expert testimony that was provided. What should we be focusing on? Well, I do think that the board has made clear in Cassius Topete that it is the I read the BIA's decision as saying it has to be at the time of admission. Well, I think that's what the board said. The board in this case, I think, said that. But I think. That's what they said in the. So it wouldn't be what the IJ. It's not what they had reason to believe at the time it gets to the IJ, according to the BIA. It's at the time of admission, is it not? Well, as long as I think what Your Honor had indicated, as long as someone within the agency, whether it's the immigration judge or someone at the time that he is being admitted has knowledge that he's inadmissible. That's different from at the time the hearing is before the IJ. Because if you bring an expert witness in who testifies about information that was obtained after he's been admitted, right? Well, if that knowledge was known to an immigration officer at the time he was seeking admission, it would be. But if it's subsequent. Well, that's the difference, isn't it? Yeah, I'm not sure. That's a difference. For example, if they discover something. I'm just asking for clarification. In C.S. Topete, which is August of 2010, they say, this is the BIA, says, it is not relevant under the terms of the statute that the inspecting immigration officer does not have access to information regarding the aliens trafficking if that information is known to other immigration officials. Thus, as long as the information was demonstrably known to an appropriate immigration official when the admission occurred, it can be relied upon to sustain the charge. Okay, so if at the time of the admission, that's when he's coming across the border, correct? Correct. All right, if at that time they did not know, nobody in the immigration, no immigration official was aware of information that later turns up before the hearing, before the I.J. happens, can the government then bring in under this BIA ruling and say, well, we can justify reason to believe based on after-acquired information? No, I think so. I was looking. Well, that's what they depended on here in part. For instance, that, you know, they found out that he had been engaged in other, I'll say, illegal border activity, right? Well, I think that was at the time they were interviewing him. No, which was not known to the admitting officers at the time. When they questioned him before they charged him. And also they didn't know, you know, you don't know whether they knew what the expert, so-called expert testified to, that while no one would trust this amount of marijuana to somebody they didn't know, right? That was new. There's no knowledge, there's nothing in the record that shows the officer, the immigration officer at the border knew that. And I don't, I'm not sure that's always true anyway. But anyway, you see, the basic problem I think in this case is, it's kind of murky as to what the standard is as to, you know, whose reason to believe it is and when. I mean, you referred to certain BIA cases, some of them presidential, you know, and there's, but some of the Ninth Circuit cases seem to go the other way, don't they? And I think, you know, if we determine that Ninth Circuit law says something else, we're bound by Ninth Circuit law, right? Now, what's your understanding of what Ninth Circuit law is as to, you know, when and where you make that determination and reason to believe and by whom? Well, I think initially that those officers made that determination. I'm asking what you think Ninth Circuit law is. Do you focus? I think under Lopez-Molina it's, you know, that they're looking, you know, what's happening is these officers have to determine whether he's in it, whether they're going to charge him as inadmissible or not. So Lopez-Molina says it's the admitting officer at the border whose reason to believe is determinative and not the I.J.? Well, the I.J. is reviewing that or looking at what the I.J. says. Well, I'm asking you what you believe the state of Ninth Circuit law is. Well, I believe that in Lopez-Molina there were officers at the border who were, had reason to believe, but it was the immigration judge who's hearing the testimony, which is exactly what happened in this case. I mean, you have Mr. Gomez testifying. You're not making a clear statement to me. What do you believe the Ninth Circuit law is? You know, whose reason to believe is it and at what time? I believe that what it is is that the immigration judge has reason to believe. When you say I believe, do you believe that's the Ninth Circuit law? I believe that that is the Ninth Circuit law in Lopez-Molina, that the immigration judge has reason to believe. And it's really, I mean, I. But that doesn't seem to be the BIA law, does it? Well, when I read Cassius to Pete, it says, thus the immigration judge could rely on the conviction to deem the petitioner as a suspected trafficker in controlled substances. Because that's the one they knew about. I'm sorry, Your Honor? That's the one they had already charged him. That's what they said they had. Yes. So it was the immigration judge is what they're saying. No, but they had charged the DHS had already placed the respondent in proceedings as a result of his conviction. They're saying that the DHS knew at the time of admission. The border agent didn't know it. But DHS does. It does not, in this BIA opinion, rely anywhere on after-acquired information, after-acquired from Secretary Napolitano down. Nobody knew at the time of admissibility certain information. So at least as I read the BIA opinion, that would not be admissible evidence to the IJ. Do you agree with that? I do agree with that. So then Lopez says that it is the BIA or the IJ, and do you understand Lopez to be consistent with the BIA's 2010 opinion or different from? I read it as being consistent. Okay. Can I ask about this adverse credibility? Let's finish on this one. Well, I just address this. I think, as I read this record, the problem in this case is that the IJ believed that, well, what was important was, you know, the determination made at the border is the reason to believe. So, therefore, it was useless for him or her, the IJ himself, to make a determination whether he believed, you know, the petitioner to be credible, because it didn't make any difference because it was not his determination. That's the way it seemed to me the IJ looked at the law in this case, and I don't know whether that's right or wrong. I think maybe under Ninth Circuit law it could be wrong. So his failure to make a credibility determination was based on, I think, a misunderstanding of the law. That's the way I look at this. It wasn't his function to make that. Well, I mean, I don't think that it was necessary. It's what did, you know, those officers are seeing his demeanor. They're looking at the amount of marijuana and making a determination, yes, to charge him, and then the immigration judge is obviously looking. Is there reason to, you know, did these officers have reason to believe? And the answer is no. But what Judge Fischer says, under our case law, it seems to be either the IJ or the BIA that has to make the ultimate determination of whether there's reason to believe. I agree. I mean, but the officers, I agree. Well, to make that determination, then, don't you have to make a credibility finding? I don't think that's necessary because it's what those officers are doing. Well, because under our case law, if you don't make a credibility finding, you know, possibly you're bound to accept the credibility of the Petitioner, possibly. Although I know you're brief argued against it. Could you – I'm quite interested in this because I may be of the view there was reasonable cause to believe at the border and even more before the immigration judge. But there was no adverse credibility finding. And there is a line of cases in the Ninth Circuit where that's been required. Why shouldn't an adverse credibility finding be required in this case? Well, to answer your question, first I don't think that the Court has extended the presumption of credibility to the removal or inadmissibility phase of a proceeding. It's always been at the eligibility phase. And in the eligibility phase, it's the Petitioner who has the burden by a preponderance of the evidence to establish eligibility for relief. Here, the Petitioner has the burden of showing clearly and beyond doubt that he is admissible. And so his testimony – if his testimony alone is sufficient, then – and if it's sufficient, then they could really never charge anyone as inadmissible for bringing drugs across the border. No, if it's – well, if it's – Unless they find him not credible. Well, yes, unless you find him not credible. But I don't think that that's relevant. What's relevant is that the officers believed that he was engaged, not whether what he says. What he said, obviously the officers did not believe him. And obviously, because what they were doing was they were asking him questions about – to determine whether he knew that there were drugs in his house. Well, let's say we read Lopez Molina the way I read it, and the Ninth Circuit says that you focus on whether the immigration judge had reason to believe. And that's why you can consider, for example, the expert testimony they heard about what it means when somebody's caught with 8,500 pounds of marijuana. Then, either explicitly or implicitly, when there's disputed testimony or evidence, the immigration judge makes a credibility determination about, in this case, the petitioner's credibility. It seems to me that implicitly he decided that there was reason to believe, that the petitioner was not credible. But he didn't say that expressly. So what's essentially the legal authority or reasoning – because there may not be anything right on point – reasoning, again, perhaps, why the requirement of an express finding that is in, like, asylum cases shouldn't be imported to this type of proceeding? Well, number one, it's because he – well, first of all, his – well, let me go back. His credibility doesn't – it doesn't really bear upon whether those officers had reason to believe. And – But you assumed – Go ahead. Well, even if we assumed – Not assuming credibility. Assuming that it's whether the immigration judge has reason to believe. Right. But, you know, the immigration judge is weighing the testimony, right? I mean, if two people witness a car accident and one says the light is red and one says the light is green and both are credible, someone has to make a decision about who's telling – who's right. And I think that's what happened. Yes, but here's the problem, counsel. If it's the IJ's belief, it may be that the border officers had probable cause to believe that he was a drug smuggler. But when all the evidence is being heard before the IJ, the IJ finds with all of the facts, including the testimony of the defendant and the analogized criminal, finds that the – he was in fact credible and that he was an unknowing mule in this case, didn't know that he had been saddled with this bunch of marijuana. And therefore, in fact, the border agents were wrong. They had probable cause, so there's no Fourth Amendment violation of a statement if we're in the criminal context. But it doesn't convict. So if – that's why it's important, whether it is the IJ's reason to believe. And if the IJ is persuaded, then the IJ would be free to reject the probable cause at the border determination of the agents. That's what we're wrestling with. And what's your position on that? My position is that it's not relevant with respect to his – but beyond that, I understand that the court doesn't – but he still can't meet his burden of showing, clearly and beyond doubt, that he's admissible. And clearly the IJ weighed the testimony and found that what the officers said gave the immigration judge reason to believe that the petitioner was inadmissible. Okay. We're over time. Thank you. Thank you. Your Honors, I waive my… All right. Thank you. All right. The case argued is submitted. Okay, the next case on calendar is Perez-Hernandez v. Holder. This guy Holder is a real recidivist. He winds up in all of these cases.
judges: Wolf, Tashima, Fisher